## CONFIDENTIAL SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter referred to as "Agreement"), is entered by and between **Reginald Lumpkin**, on behalf of himself, his heirs, executors, administrators, legal representatives and assigns (hereinafter referred to collectively as "Lumpkin") and **Volusia Traders, Inc., a Florida corporation, d/b/a Spanos Motors** and their respective present, past, and future affiliates, predecessors, heirs, successors, parents, subsidiaries, assigns, insurers, and each and every one of their respective owners, shareholders, servants, officers, directors, employees, agents, principals, relatives, representatives, beneficiaries, alter egos, and attorneys (hereinafter referred to collectively as "Volusia Traders, Inc.") and **Alex Spanos,** on behalf of himself, his heirs, executors, administrators, legal representatives and assigns (hereinafter referred to as "Spanos") (hereinafter Volusia Traders, Inc. and Spanos are referred to collectively as "The Released Parties").  Throughout this Agreement, Lumpkin and The Released Parties shall collectively be referred to as the "Parties."  This Agreement shall not in any way be construed as an admission by The Released Parties of any violation of any law or any other liability including common law liability to Lumpkin.

WHEREAS, Lumpkin was employed by Volusia Traders Inc., a Florida corporation, d/b/a Spanos Motors, and

WHEREAS, Lumpkin has alleged unlawful employment practices in violation of Florida law against The Released Parties by filing a lawsuit entitled *Reginald Lumpkin, Plaintiff, vs. Volusia Traders, Inc. and Alex Spanos, Defendants, Case No. 6:14-CV-2049-ORL-31-TBS,* allegations which the Released Parties vehemently deny;

{040455-013 : TLEEK/DRFTMSC : 01973706.DOCX; 1}

NOW WHEREFORE, in consideration of the promises and mutual covenants herein contained, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      The Released Parties agree to pay to Lumpkin the total amount of Eighteen Thousand Dollars and No Cents **($18,000.00)**, which includes attorneys' fees and costs. A check in the amount of $18,000 shall be issued and made payable to "Arcadier & Associates, P.A. Trust Account" allocated as follows:   i) $8,800.00 to Plaintiff, ii) $2,000.00 for costs, and iii) $7,200.00 for attorneys' fees. Plaintiff has received full compensation and attorney's fees and costs have been negotiated separately.

The settlement payments described above will be due in Plaintiff's counsel's office (c/o Maurice Arcadier, Esq., 2815 W. New Haven, Suite 304, Melbourne, FL 32904) by **January 25, 2016.** *

2.      <u>Release By Employee.</u>   Based on the consideration described above, the Consideration, which Employee agrees is sufficient consideration, to which Employee is not otherwise entitled, Employee hereby fully and finally releases and discharges the Company from any and all claims, demands, rights, damages, costs, losses, suits, actions, causes of action, attorneys' fees, expenses, salary, stock options, commissions, bonuses, wages, overtime or any sums of any nature whatsoever, in law or in equity, known or unknown, except for unemployment compensation, arising from or by reason of any matter, act omission, cause or thing whatsoever, whether known or unknown, foreseen or unforeseen, including without limitation: any and all claims by or on behalf of Employee that the Company has ever committed any statutory violation or other wrong with respect to Employee insofar as such claims have or could have been asserted by Employee; any and all claims of other liability or damage of any

{040455-013 : TLEEK/DRFTMSC : 01973706.DOCX; 1}

2

* or at such time as the court approves this settlement Agreement, whichever is later.

nature whatsoever which have arisen or might have arisen from any alleged acts, omissions, events, circumstances or conditions related to Employee's employment with and/or separation from the Company including but not limited to claims for breach of contract, commissions, overtime pay and/or any fact or occurrence up through the date of this agreement, including any alleged acts of harassment, discrimination or retaliation by the Company; age discrimination, workers' compensation retaliation, intentional infliction of emotional distress, constructive discharge, wage and hour, assault and battery and any other tort (including, but not limited to, any and all claims of negligent hiring, retention and/or supervision, intentional or negligent invasion of privacy, defamation, compelled defamation, intentional or negligent infliction of emotional harm, libel, slander, invasion of privacy or violations of public policy), any and all legal restrictions on the Company's right to terminate employees, or any federal, state or other governmental statute, regulation or ordinance, including any and all claims for monetary recovery, including past or future lost wages, mental anguish, pain and suffering, any liquidated, compensatory or punitive damages and attorneys' fees, expenses and interest; and any and all claims whatsoever asserted by Employee against the Company and for or on account of any matter or thing whatsoever occurring up to and including the date of execution of this Agreement.  The statutory claims released by this Settlement Agreement include, but are not limited to, claims brought under:

Title VII of the Civil Rights Act of 1964, as amended in 1991;

The Employee Income Retirement Security Act ("ERISA");

The Age Discrimination in Employment Act;

The Older Worker Benefit Protection Act;

The Fair Labor Standards Act;

The Americans With Disabilities Act;

The Family and Medical Leave Act;

The National Labor Relations Act;

The Fair Credit Reporting Act;

The Immigration Reform Control Act;

Executive Order 11246;

OSHA;

The Equal Pay Act

The Uniformed Services Employment and Reemployment Rights Act;

The Worker Adjustment and Retraining Notification Act;

The Employee Polygraph Protection Act; and

Any state or federal anti-discrimination, consumer protection and/or trade practices act.

The following are also covered by the above-referenced Release: The Florida Civil Rights Act, the Florida Whistleblower Act, the Florida Workers' Compensation Act, and the Florida laws, statutory or common law, regarding political activities of employees, lie detectors, jury duty, employment protection, consumer reports, discrimination, privacy rights and/or interests of employees, and any and all state, municipal and local laws and ordinances of the State of Florida, except for unemployment compensation.

Employee represents and warrants that Employee has not and will not assign Employee's interest in any of Employee's asserted claims or any unasserted claims against the Company to anyone.

{040455-013 : TLEEK/DRFTMSC : 01973706.DOCX; 1}

4

Additionally, Employee represents that Employee does not presently have on file, and has not made in any forum, any complaints, charges, or claims (whether civil, administrative, or criminal) against the Company in the State of Pennsylvania, State of Florida, Division of Administrative Hearings, except for unemployment compensation. Employee agrees to voluntarily dismiss any potential claims with prejudice, with each party to bear its own attorneys' fees and costs.  Employee further agrees that if Employee violates this Agreement by bringing any action, charge, claim or complaint against Company in any form, Employee shall pay all costs and expenses of defending such action, charge, claim or complaint incurred by the Company, including reasonable attorneys' fees.

3.      Lumpkin agrees that this is a disputed claim and represents that upon receipt of all payments described above, he will have been paid in full for all hours worked, including any overtime hours worked while in any non-exempt job position.

4.      By entering into this Agreement, no Party admits any liability, fault or wrongdoing.

5.      Lumpkin agrees not to apply for, solicit, seek or otherwise attempt to obtain or accept employment with, or to provide services in any manner to, the Released Parties.  Lumpkin further agrees that the Released Parties shall not be under any obligation to employ or contract with him and that, should any application be made by him, the Released Parties shall not have any obligation to process that application or to hire him and that the failure to process the application or to hire him shall not constitute a violation of any local, state or federal law.  If any prospective employer contacts The Released Parties regarding Lumpkin, The Released Parties

will give a neutral reference indicating only Lumpkin' dates of employment, pay rate and position.

6.     Confidentiality. Except where compelled by law, the parties agree not to disclose or publicize the terms or existence of this Agreement to anyone other than their spouse(s), attorney(s) and tax advisor(s) or accountant(s), all of whom shall be notified of this limitation and agree to be bound by the terms of these agreements prior to discussion of these matters.  If asked about this matter by anyone else, Lumpkin agrees only to state that he has elected not to pursue the matter further.

7.     Non-Disparagement.  No Party shall make or publish or instigate the making or publication of any statement (in verbal, written or electronic or other form) disparaging of the other Parties, their products, services, affairs or operations or their past or present directors, officers, employees, shareholders, owners or agents whether or not such disparagement constitutes libel or slander.

8.     Each party shall be responsible for payment of their own attorneys' fees and costs, except as provided in Paragraph 1.

9.     Lumpkin represents and warrants that he is authorized to enter into and that he has the authority to perform the terms of this Agreement.  Lumpkin represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of all or any portion of the Released Claims.

10.    If any provision of this Agreement or the application thereof to any party or circumstances shall be determined to be invalid or unenforceable to any extent, the remainder of

{040455-013 : TLEEK/DRFTMSC : 01973706.DOCX; 1}

this Agreement and the application of such provisions to any other party or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

11.    This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.   Facsimile and electronic copies of the executed Agreement shall have the same force and effect as an original copy.

12.    This Agreement is binding on each of the parties and their respective heirs, successors and assigns.

13.    In the event any Party breaches this Agreement, the non-breaching Party shall be entitled to enforce all provisions of this Agreement in Court seeking all remedies available to it both in law and equity.  The prevailing Party shall be entitled to recover its attorneys' fees and costs incurred in any proceeding to enforce this Agreement, including all fees and costs through all appeals.

14.    This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to its choice of laws or conflict of laws principles.

15.    Except as expressly provided herein, the parties represent and warrant that in executing this Agreement, they do not rely upon and have not relied upon any oral or written representation, promise, warranty or understanding made by any of the parties or their representatives with regard to the subject matter, basis or effect of this Agreement.

16.    The parties acknowledge that each party has participated in the drafting of this Agreement and each has had an equal opportunity to participate in the drafting of this

Agreement. No ambiguity shall be construed against any party based upon a claim that the party drafted the ambiguous language.

17.     The parties acknowledge and assume the risk that additional or different facts which they believe to exist may now exist or may be discovered after this Agreement has been entered into. The parties agree that any such additional, different or contrary facts shall in no way limit, waive, affect or alter this Agreement.

18.     Lumpkin acknowledges that he has been advised to consult an attorney prior to signing this agreement. Lumpkin understands that whether or not he consults with an attorney is his decision. In this respect, Lumpkin has consulted with and been advised by Maurice Arcadier, Esquire in this matter and is satisfied that Mr. Arcadier has provided him excellent legal advice and has explained to him all of his options in connection with this Agreement.

19.     This Agreement, consisting of nine (9) pages, is freely and voluntarily entered into by the parties. The parties acknowledge that they have read this Agreement and that they understand the words, terms, conditions and legal significance of this Agreement. This Agreement may be executed in counter-parts and electronic and facsimile copies shall be treated as originals.

[REMAINDER OF PAGE LEFT BLANK]

20. The parties acknowledge and agree that the total amount of the settlement ($18,000) is the maximum amount to be paid by Volusia Traders under any circumstance, independent of whether the court accepts and approves this settlement agreement.

{040455-013 : TLEEK/DRFTMSC : 01973706.DOCX; 1}

8

Date: _/- //- 2016_

REGINALD LUMPKIN

VOLUSIA TRADERS, INC., D/B/A Spanos
Motors

Date: _/- //-2016_

Sign

Print Name: _ASHLEY SPANOS_
Representative of VOLUSIA TRADERS, INC.,
D/B/A Spanos Motors

Date: _/- /2 -2016_

ALEX SPANOS

{040455-013 : TLEEK/DRFTMSC : 01973706.DOCX; 1}

9